IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-381-DCK

| | |
|---|---|
| MELVIN G. BRYANT, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| CHARLOTTE EYE EAR NOSE & THROAT ASSOCIATES, PA, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Summary Judgment" (Document No. 34). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will grant the motion.

## I. PROCEDURAL BACKGROUND

Plaintiff Melvin G. Bryant ("Plaintiff" or "Bryant"), appearing *pro se*, initiated this action with the filing of his "Complaint" on July 12, 2018. (Document No. 1). Plaintiff contends that his employer Charlotte Eye Ear Nose & Throat Associates, PA ("Defendant" or "CEENTA") discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended. Id. Specifically, Plaintiff alleges Defendant discriminated against him based on his race and age, on or about November 17, 2017, when his "employment status changed to 'PRN.'" (Document No. 1, p. 3). Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on April 27, 2018, and received a "Notice of Right to Sue" on May 8, 2018. Id. See also (Document No. 1, pp. 11, 20).

The Complaint notes that Plaintiff previously filed a related action. (Document No. 1, p. 5). In that case, based on the same facts and filed on June 5, 2018, the Honorable Graham C. Mullen found that the Court lacked subject matter jurisdiction over Plaintiff's Title VII claims based on race, and that Plaintiff "has failed to state a claim for relief under either Title VII or ADEA for age discrimination." 3:18–CV-292-GCM (Document No. 3, pp. 10-11) (W.D.N.C. June 15, 2018) (citing 28 U.S.C. § 1915(e)(2)). Judge Mullen dismissed Plaintiff's Title VII claims based on race and dismissed without prejudice Plaintiff's Title VII and ADEA claims for age discrimination. Id.

In this case, originally assigned to the Honorable Frank D. Whitney, Jr., the Court held on August 14, 2018, that Plaintiff's discrimination and retaliation claims were sufficient to pass initial review. (Document No. 3, pp. 7-8).

The Complaint alleges that Plaintiff is a 57 year-old African-American male, who began working for Defendant in April 2004 as a "Certified Opthalmic Assistant," and is still in the same position. (Document No. 1, p. 7). The Complaint further states that in April 2017, Plaintiff "was told a couple of providers thought I was too slow" and that he was informed in November 2017 that his employment status and schedule would change because certain providers said they did not want to work with Plaintiff because he "was too slow." (Document No. 1, pp. 7-8). Plaintiff contends that he is "being subjected to discrimination based upon illegal factors such as [his] race and age." (Document No. 1, p. 10). Plaintiff concludes that he is entitled to $1.4 million dollars. (Document No. 1, p. 6).

"Defendant's Answer To Plaintiff's Complaint" (Document No. 6) was filed on September 24, 2018. Plaintiff agreed to participate in the Court's Pro Se Settlement Assistance Program, but the parties' attempts to reach an agreement on the issues with the help of a mediator reached an

impasse.  See (Document Nos. 11, 12, 15, and 17).  Following the impasse, the parties filed a "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 19) and a "Certification And Report Of F.R.C.P. 26(f) Conference And Proposed Discovery Plan" (Document No. 20) on July 3, 2019.  The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 21) on July 11, 2019.

"Defendant's Motion For Summary Judgment" (Document No. 34) and "Memorandum In Support…" (Document No. 35) were timely filed on December 20, 2019.  See (Document No. 27). Plaintiff failed to file a timely response by January 3, 2020, and the Court *sua sponte* extended Plaintiff's deadline to January 17, 2020. (Document No. 36).  On January 14, 2020, *pro se* Plaintiff requested, and was allowed, an additional extension of time to January 31, 2020, to file his response.  (Document No. 38).  "Plaintiff's Opposition To Defendant's Motion For Summary Judgment" and supporting brief were filed January 30, 2020.  (Document No. 39).  Following its own extension of time, Defendant filed its "Reply Brief In Support Of Defendant's Motion For Summary Judgment" (Document No. 44) on February 13, 2020.

The pending motion is now ripe for review and disposition.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties over material facts (determined by

3

reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. "For a non-moving party to present a genuine issue of material fact, '[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case.'" Williams v. Carolina Healthcare Sys., Inc., 452 Fed.Appx. 392, 393 (4th Cir. 2011) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)).

In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

### III. DISCUSSION

**A. Factual Background**

In support of its motion for summary judgment, Defendant first provides a helpful summary of undisputed facts. (Document No. 35, pp. 2-8). Plaintiff does not seem to challenge Defendant's statement of facts, which cites extensively to the Complaint, Plaintiff's deposition, and the "Declaration of Laura Sparkman;" as such, the undersigned will incorporate those facts

4

below.  See (Document No. 39) and (Document No. 35)(citing Document Nos. 1, 34-1, and 34-2)).

Beginning with his hiring in April 2004, through 2017, Plaintiff worked for Defendant as a Certified Ophthalmic Assistant ("COA") in a full-time "on call" role.  (Document No. 35, p. 2)(citation omitted).  "On-call" employees receive on-call pay, even if not assigned to work on that particular day.  Id.  Plaintiff estimated that he received an average of $250 per month in on-call pay.  Id.  Throughout his employment, Plaintiff has worked as a "floater," meaning he works at multiple CEENTA locations.  Id.  His duties involve preliminary patient evaluations prior to a patient seeing a physician including: taking patients medical histories, checking vision and eye pressure, instilling medications and providing information to assist patients' care.  Id.

Defendant notes that Plaintiff testified that "speed and efficiency are 'vital' to a COA's success at CEENTA, as is a physician's satisfaction with the COA."  (Document No. 35, p. 3) (citation omitted).  Plaintiff acknowledges that he consistently received feedback about his slow speed working up patients – "if you look at all my evaluations, there is always some mention of speed."  Id.

On May 21, 2017, Plaintiff reached out to his supervisor Laura Sparkman ("Sparkman") and requested to not be scheduled for work on Mondays (one of Defendant's busiest days), and thus change his status from full-time (5 days per week) to three-quarter time (4 days per week). Id.  Plaintiff also expressed an unwillingness to work with four out of the six doctors at the Statesville office.  Id.  Sparkman allowed Plaintiff's requests, but informed him that on-call pay may not be guaranteed for three-quarter time employees.  (Document No. 35, pp. 3-4).

Defendant's factual summary also notes that multiple providers in its clinics requested not to work with Plaintiff due to his slow patient workup times.  (Document No. 35, p. 4).  Moreover,

5

Defendant states that Sparkman informed Plaintiff that this made it difficult to find work for him – including in his 2017 performance evaluation – and that Plaintiff has admitted he was aware of this difficulty. Id.

Based on the foregoing, Sparkman consulted with Defendant's Chief Operations Officer, Karen Stull ("Stull") and the decision was made to change Plaintiff's status from "on-call" to PRN (short for *pro re nata* or "as needed"). (Document No. 35, pp. 1, 5). Unlike "on-call" employees, PRN employees indicate when they are available to work and are assigned accordingly, but are not compensated unless they fulfill an assignment. (Document No. 35, p. 5). Sparkman informed Plaintiff of the change in his employment status on November 15, 2017. Id.

Plaintiff subsequently submitted internal grievances to Defendant's HR Compliance Officer, and then its Chief Executive Officer. (Document No. 35, pp. 5-7). Plaintiff was informed by Defendant that the change in his status was due to his request not to work on Mondays, not to work with certain physicians, and certain physicians' requests not to work with him. Id. Plaintiff did not allege in his internal grievance letters that his change status was based on his race or age. Id.

"After his employment status change, Plaintiff was offered assignments in November and December 2017 and, as was his right, turned down certain assignments both months." (Document No. 35, p. 7). Sparkman did not hear from Plaintiff again until July 2018. Id. Plaintiff was scheduled to work two days in July 2018, but then Sparkman informed him he was no longer scheduled because he failed to provide her with requested information. (Document No. 35, pp. 7-8). Defendant notes that Plaintiff has admitted that his status change was due to provider complaints, and that he has had no desire to work for Defendant since his status change. (Document No. 35, p. 8).

6

Case 3:18-cv-00381-DCK   Document 46   Filed 05/08/20   Page 6 of 15

**B. Arguments**

    1. Race Discrimination

Defendant notes that without direct evidence of discrimination, Plaintiff must proceed under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  (Document No. 35, p. 10).

> To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside of the protected class. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by PriceWaterhouse v. Hopkins*, 490 U.S. 228 (1989). Once the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the nondiscriminatory reason offered for the decision at issue is mere pretext. *Id*.

Id.

Defendant first argues that Plaintiff's case fails at the second element because there is no dispute that Plaintiff was not performing satisfactorily at the time of his employment status change. (Document No. 35, pp. 10-11).  Defendant notes that Plaintiff admits numerous providers requested not to work with him due to his speed, which made it difficult for Sparkman to assign him work.  Id.  Defendant contends that Plaintiff could not be performing satisfactorily where providers and practice managers requested not to work with him.  Id.

Next, Defendant argues that Plaintiff fails at element four because he cannot show that he was treated differently than a similarly situated employee outside his protected class. (Document No. 35, p. 11).  Plaintiff has only identified Micaela Caruccio ("Caruccio"), a current COA who

7

Plaintiff believes was allowed Mondays off without a change in status. Id. According to Defendant, Caruccio was temporarily allowed Mondays off to attend school and did not otherwise limit her availability; moreover, there were no provider complaints about Caruccio. Id. Defendant concludes that Caruccio is not a similarly situated employee to Plaintiff. Id.

In addition, Defendant asserts that even *if* Plaintiff established a *prima facie* case of race discrimination, CEENTA has more than adequately articulated a nondiscriminatory reason for the challenged employment action. (Document No. 35, pp. 11-12) (citing Gillins v. Berkeley Elec. Coop., Inc., 148 F.3d 413, 416 (4th Cir. 1998) and Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007)). In short, Plaintiff's own restrictions on his availability and certain providers' requests not to work with him made it difficult to schedule Plaintiff and imprudent financially to continue paying him for "on-call" status. (Document No. 35, p. 12). Defendant concludes these "are legitimate nondiscriminatory considerations" and that Plaintiff has not, and cannot, show that this explanation is a pretext to mask race discrimination. (Document No. 35, pp. 12-14)

In response, *pro se* Plaintiff asserts that "the real reason for the status change is due to his age and race." (Document No. 39, p. 2). He seems to suggest that Defendant erred by honoring his request to have Mondays off and to not work with certain providers, and/or that his alleged performance issues and problems with certain providers and having Mondays off arose because Sparkman was his supervisor. (Document No. 39, pp. 2-3).

Specifically addressing the arguments regarding discrimination based on race, Plaintiff contends that his performance was satisfactory and that there is insufficient documentation to show otherwise. (Document No. 39, p. 16). Plaintiff suggests that without more specific data it is not enough to argue that providers were dissatisfied with his speed. Id. Moreover, Plaintiff contends

8

he was not made aware "that certain providers have concerns with his speed or anything else." Id. Plaintiff argues that he was treated differently than similarly situated employees because he "is the only African-American working in clinics who is being treated differently than others who are similarly situated outside his protected class." Id. Plaintiff further asserts that because the providers who requested not to have him work in their clinics are mostly Caucasian, "one could infer he was the target of the removals which is a factor motivated by race." (Document No. 39, p. 17).

Plaintiff also argues that Defendant has provided changing explanations or rationale for altering the status of his employment. See (Document No. 39, pp. 17-19). He notes that explanations for Defendant's decision include: difficulty placing Plaintiff; did not make financial sense to continue paying "on-call" rate when he wasn't being assigned work; a purported change in policy; he wanted Mondays off; certain providers requested not to work with him due to his speed; he didn't want to work in Statesville. (Document No. 39, p. 17). Plaintiff asserts that an "employer's changing rationale for making an adverse employment decision can be evidence of pretext." (Document No. 39, p. 9) (citations omitted).

In reply, Defendant first asserts that Plaintiff has still not shown he was meeting Defendant's legitimate performance expectations at the time of his status change. (Document No. 44, p. 2). Defendant notes that neither Plaintiff's response or deposition testimony dispute the fact that his speed was consistently identified as an issue in his performance reviews and that numerous providers complained about his speed. Id. Moreover, Defendant contends it is also undisputed that Plaintiff's 2017 performance evaluation stated that providers and practice managers requested not to have Plaintiff in their practices due to his slow workup times. Id. See also (Document No. 39, pp. 9-10).

9

Defendant argues that Plaintiff seems to take the position that his speed is unrelated to his performance, even though he "admitted in his deposition, speed is '<u>vital</u> to a COA's success at CEENTA, as is physician satisfaction with the COA.'" (Document No. 44, p. 3). Defendant further argues that even if Plaintiff believes he was meeting Defendant's legitimate expectations at the time of his status change, his self-assessment is not relevant – "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." <u>Id.</u> (quoting <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003)).

Next, Defendant argues that Plaintiff still fails to establish a genuine issue of fact regarding differential treatment of similarly situated employees. <u>Id.</u> Defendant notes that Plaintiff only asserts a "bare conclusion" that he was "treated differently" than unidentified employees without any specifics or citation to evidence of record. (Document No. 44, p. 4). As such, Defendant contends that Plaintiff's conclusory allegations are "entirely insufficient to warrant a trial by jury." <u>Id.</u>

Finally, Defendant contends that there is nothing other than Plaintiff's sheer speculation – no evidence of race-based animus or that race played any role in the decision to change his status – that would suggest that Defendant's proffered explanations are a pretext to mask discrimination. (Document No. 44, pp. 6-7). Defendant notes that speculation and conjecture are insufficient support to avoid summary judgment. <u>Id.</u> (citations omitted).

Addressing the allegation of different and inconsistent explanations for its decision about Plaintiff's status, Defendant acknowledges that Sparkman initially described the reasoning as a change in policy. (Document No. 44, p. 8). Defendant notes, however, that soon thereafter Sparkman clarified that the impetus for the change was Plaintiff's request not to work Mondays, not to work with certain providers, and certain providers' requests not to work with Plaintiff.

10

(Document No. 44, pp. 8-9). Defendant further explains that "pretext is a lie, not merely a mistake," and that the ultimate question for pretext is whether the decision-makers honestly believed the explanation for the decision at issue. (Document No. 44, p. 9). Defendant contends there is nothing in the record to suggest that CEENTA did not make the change to Plaintiff's status for the reasons stated. (Document No. 44, p. 10).

The undersigned finds Defendant's arguments compelling. It does not appear that Plaintiff has established a *prima facie* case for discrimination that satisfies the McDonnell Douglas standard, but even *if* he had, the Court agrees that Defendant has adequately identified legitimate, non-discriminatory reasons for changing Plaintiff's employment status. In short, the undersigned finds Plaintiff's conclusory and speculative allegations do not support claims for discrimination. As such, the undersigned will grant Defendant's motion for summary judgment.

2. Age Discrimination

Defendant contends that Plaintiff's age discrimination claim also fails as a matter of law. (Document No. 35, p. 14). Defendant notes that Plaintiff must establish that age was the "but-for" cause of the employment action and that the Fourth Circuit has articulated the issue at summary judgment as: "whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision." (Document No. 35, pp. 14-15) (quoting Cox v. Lowe's Home Centers, LLC, 3:14-CV-679-MOC-DCK, 2015 WL 7288689, at *2, 4 (W.D.N.C. Nov. 17, 2015) aff'd by 667 Fed.App'x 405 (4th Cir. 2016)).

Defendant asserts that Plaintiff has been unable to articulate any support for the argument that age was the basis for the change in his employment status, "much less demonstrate that age was *the determinative factor* in the decision." (Document No. 35, p. 15). Defendant notes that

11

Plaintiff only stated in his deposition that he believed his status was changed based on age "Because I'm over the age of 40." Id. But he also testified that he thought his status change was prompted by providers indicating they didn't want to work with him. Id.

Plaintiff's response acknowledges the accuracy of the above statements. (Document No. 39, p. 13). However, Plaintiff goes on to assert that Defendant's concerns about his speed could be interpreted as a preference for younger floaters who work more quickly – "'Speed or Energetic' are words that are typically associated with age as such one can infer that this is what is meant." (Document No. 39, p. 14). Plaintiff also suggests that the reason Caruccio was allowed a temporary accommodation to have Monday's off without a change of employment status was because of her age, not because it was temporary, for school, or that she did not have any provider complaints. Id. Plaintiff seems to conclude that comments addressing his speed during patient workups are sufficient evidence to create a genuine issue of fact as to whether age discrimination motivated Defendant's employment status decision. (Document No. 39, p. 15).

In reply, Defendant argues that similar to the race-based claims, Plaintiff's age discrimination claims also fail for a lack of any evidence, and based on Plaintiff's own admissions. (Document No. 44, p. 7). For example, since Plaintiff admitted his status would not have changed "but-for" provider complaints, age cannot be the reason for the change. Id. Defendant again notes that Plaintiff must show that age was the "but-for" cause of the employment decision. (Document No. 44, p. 8) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009)).

Defendant also provides the following helpful analysis:

> Plaintiff attempts to salvage his claim by arguing that comments regarding his slow speed must be age-related and are evidence of pretext. (Doc. 39, pg. 8-10). This argument has been rejected outright. *See Medlock v. United Parcel Serv., Inc*., 608 F.3d 1185, 1195-1197 (10th Cir. 2010) (stating that "management concerns

12

> over slow work pace are clearly legitimate and facially neutral and cannot simply be equated with age bias" and that "employer concern over sub-par work pace or productivity is a mask for age discrimination is untenable as a general inference.") (emphasis added). Plaintiff's unsupported leap to equate feedback related to his speed in performing his job with evidence of age discrimination, therefore, falls flat.

Id.

The undersigned again finds Defendant's arguments to be persuasive. There are no genuine issues of fact upon which a reasonable jury could find that Plaintiff was discriminated against based on his age. Even Plaintiff acknowledges that his employment status would not have changed but for multiple providers' dissatisfaction with his speed working up patients. Therefore, the undersigned finds good cause to grant Defendant's motion for summary judgment.

3. Retaliation

Defendant notes that Plaintiff's retaliation claim is subject to the same McDonnell Douglas burden-shifting framework as his discrimination claim. (Document No. 35, p. 16).

Defendant observes that Plaintiff alleged in his deposition testimony that he was retaliated against when Sparkman scheduled him to work two days in July 2018, then removed him from the schedule. (Document No. 35, pp. 16-17) (quoting Document No. 34-2, pp. 69-71). Defendant argues that the retaliation claim cannot survive summary judgment because: (1) Plaintiff admitted he did not know why Defendant would be prompted to retaliate against him; (2) Plaintiff does not claim he engaged in some protected activity; and because (3) Plaintiff admits he was removed from the schedule for not providing Sparkman the information she requested related to scheduling. Id. Defendant concludes there is no evidence of retaliation whatsoever. (Document No. 35, p. 18).

13

Plaintiff offers little rebuttal other than to state he believes he was retaliated against by Sparkman cancelling assignments in December 2017 for filing internal grievances, and in July 2018 for filing claims with the EEOC in June 2018 and September 2018. (Document No. 39, pp. 19-20).

Defendant argues in its reply brief that "Plaintiff's expanding retaliation claim cannot survive summary judgment." (Document No. 44, p. 10). Defendant notes that Plaintiff previously only testified to the cancellation of two days in July 2018. Id. In short, Defendant argues there is no evidence of retaliation, and that Plaintiff has not offered any evidence to rebut its legitimate, non-retaliatory reasons for cancelling certain assignments. (Document No. 44, p. 14).

The undersigned again finds Defendant's arguments most persuasive. Moreover, it does not appear that Complaint actually asserts a retaliation claim in this lawsuit. See (Document No. 1). The undersigned's review only reveals allegations and claims related to race and age discrimination. There are certainly no factual allegations in the Complaint regarding retaliation. To the extent Plaintiff attempts to create a new cause of action through his deposition testimony and/or brief in response, such claim will not be allowed to proceed.

Based on the standard of review, arguments, and evidence discussed above, the undersigned finds that Plaintiff has failed to show that there are genuine issues of material fact to present to a jury. The Court observes that Plaintiff was allowed the schedule change he requested and continued to be employed by Defendant. Defendant's subsequent decision to cease paying Plaintiff for "on-call" status after he significantly restricted his own availability appears to have been not only legitimate and non-discriminatory, but logical. The evidence presented reflects that Plaintiff sought minimal work since requesting to reduce his hours and availability. Moreover,

there is no indication that he made any attempt to return to on-call status, or sought or performed sufficient work to merit on-call pay.

There is no evidence that Defendant's reaction to Plaintiff's performance and schedule request had anything to do with his race or age. To the contrary, an adjustment in Plaintiff's employment status appears to have been a legitimate and non-discriminatory decision of a busy medical practice.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Summary Judgment" (Document No. 34) is **GRANTED**. Plaintiff's claims shall be **DISMISSED**, and this action **CLOSED**.

Signed: May 7, 2020

David C. Keesler
United States Magistrate Judge